**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| JAMISON DOOR COMPANY AND HCR, INC. | CIVIL ACTION |
| VERSUS | 16-778-SDD-EWD |
| SOUTHEAST MATERIAL HANDLING, LLC | |

**RULING**

This matter is before the Court on the *Motion for a Judgment of Default Pursuant to F.R.C.P. 55 and Local Rule 55* on March 2, 2017[1] by Plaintiffs, Jamison Door Company ("Jamison") and HCR, Inc. ("HCR")(or collectively "Plaintiffs"). Defendant, Southeast Material Handling, LLC, ("Defendant") has never appeared in this matter nor filed an *Opposition* to this motion. For the following reasons, the Court finds that Plaintiffs' motion should be granted.

**I.    BACKGROUND**

Plaintiffs filed an open account petition against the Defendant on November 22, 2016.[2] Jamison is a Maryland corporation and the sole shareholder of HCR, a subsidiary located in the District of Columbia. Plaintiffs allege that, in May of 2010, they entered into a business relationship with Defendant whereby Plaintiffs agreed to provide certain equipment and materials to Defendant on open account.[3] Pursuant to this agreement, upon receipt of a purchase order from Defendant, Plaintiffs would deliver the order and

---

[1] Rec. Doc. No. 12.
[2] Rec. Doc. No. 1.
[3] *Id.* at ¶ 6.
41377

invoice the amount owed.[4]  Plaintiffs further allege that Defendant is liable to them for the amount of $86,123.10 for certain equipment and materials provided to Defendant for the "Associated Grocers project."[5]  Plaintiffs allege Defendant is further liable for contractual and legal interest on that amount from the date the money was due until paid, plus reasonable attorneys' fees and costs.[6]

On November 29, 2016, the Clerk of Court issued a Summons to Defendant, through its registered agent, Christopher Scott Callihan ("Callihan"), 14411 Milldale Road, Zachary, Louisiana 70791.[7]  On December 21, 2016, Defendant was served by personal service of the summons on Callihan at the listed address, and proof of service was filed into the record.[8]   Defendant never filed an *Answer* or responsive pleading to the *Complaint*.  Thus, on January 19, 2017, the Clerk of Court entered a preliminary default into the record.[9]  Plaintiffs filed a *Motion for a Judgment of Default Pursuant to F.R.C.P. 55 and Local Rule 55* on March 2, 2017.[10]   As of the date of this *Ruling*, Defendant has never appeared in this case.

## II.    LAW AND ANLYSIS

### A.  Default Judgment

The United States Court of Appeals for the Fifth Circuit has outlined a three step process to obtain a default judgment: (1) a defendant's default; (2) a clerk's entry of default; and (3) a plaintiff's application for a default judgment.[11]  The service of summons

---

[4] *Id.*
[5] *Id.* at ¶ 8.
[6] *Id.*
[7] Rec. Doc. No. 4.
[8] Rec. Doc. No. 7.
[9] Rec. Doc. No. 10.
[10] Rec. Doc. No. 12.
[11] *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir.1996).
41377

or lawful process triggers the duty to respond to a complaint.[12] A defendant's failure to timely plead or otherwise respond to the complaint triggers a default.[13] Accordingly, Rule 55 provides that the clerk must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise...."[14]

After the Clerk of Court has found a defendant to be in default, the Court may, upon motion by a plaintiff, enter a default judgment against the defaulting defendant.[15] Default judgments are "generally disfavored in the law" in favor of a trial upon the merits.[16] Indeed, default judgments are considered "a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.... [T]hey are 'available only when the adversary process has been halted because of an essentially unresponsive party.'"[17] Even so, this policy is "counterbalanced by considerations of social goals, justice and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion."[18] In accordance with these guidelines, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default."[19] While "the defendant, by his default, admits the plaintiff's well-pleaded allegations of fact,"

---

[12] *Fagan v. Lawrence Nathan Assocs.*, 957 F.Supp.2d 784, 795 (E.D.La. 2013) (citing *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 937 (5th Cir.1999)).
[13] *N.Y. Life Ins. Co.*, 84 F.3d at 141.
[14] Fed.R.Civ.P. 55.
[15] *Id.*
[16] *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (quoting *Mason & Hanger–Silas Mason Co. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir.1984)).
[17] *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir.1989) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C.Cir.1970)).
[18] *Rogers,* 167 F.3d at 936 (internal citations omitted).
[19] *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir.1996); *see also Nishimatsu Constr. Co. v. Hous. Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975) ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered.").
41377

the Court retains the obligation to determine whether those facts state a claim upon which relief may be granted.[20]

Courts have developed a two-part analysis to determine whether a default judgment should be entered against a defendant.[21] First, a court must consider whether the entry of default judgment is appropriate under the circumstances.[22] The factors relevant to this inquiry include: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.[23] Second, a court must assess the merits of the plaintiff's claims and find sufficient basis in the pleadings for the judgment.[24]

### B. Entitlement to Default Judgment

First, the Court must determine whether the entry of default judgment is appropriate under the circumstances by considering the *Lindsey* factors. As reflected by the record, the Defendant has failed to file an *Answer* or a motion under Rule 12 in response to the *Complaint*. As such, there are no material facts in dispute. Second, it is undisputed that Defendant has not responded to any of Plaintiffs' or the Court's overtures.

---

[20] *Nishimatsu Constr. Co.*, 515 F.2d at 1206; *see Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (affirming the district court's denial of a default judgment because, even if the plaintiffs factual allegations were found to be true, the defendants would not have been liable under the law).
[21] *Taylor v. City of Baton Rouge*, 39 F.Supp.3d 807, 813 (M.D.La. 2014); *United States v. Chauncey*, No. 14–CV–32, 2015 WL 403130, at *1 (M.D.La. Jan. 28, 2015); *see also Fidelity & Guaranty Life Ins. Co. v. Unknown Tr. of Revocable Trust–8407*, No. 13–CV–412–PRM, 2014 WL 2091257, at *2 (W.D.Tex. May 16, 2014) (citing cases).
[22] *See Lindsey v. Price Corp.*, 161 F.3d 886, 893 (5th Cir.1998).
[23] *Id.*
[24] *See Nishimatsu Constr. Co.*, 515 F.2d at 1206.
41377

Defendant's "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [Plaintiffs'] interests."[25] Third, the grounds for granting a default judgment against Defendant are clearly established, as evidenced by this action's procedural history and the Clerk's entry of default, outlined above. Fourth, as this Defendant has failed to respond at all to Plaintiffs or to the Court, the Court has no basis to find that the failure to respond was the result of either good faith mistake or excusable neglect. Fifth, Defendant's failure to file any responsive pleading or motion mitigates the harshness of a default judgment.[26] Finally, the Court is not aware of any facts that would lead it to set aside the default judgment if challenged by the Defendant. Thus, the Court finds that the six *Lindsey* factors weigh in favor of default.

The Court must also decide if Plaintiffs' pleadings provide a sufficient basis for a default judgment against Defendant. Plaintiffs bring this action under Louisiana's "open accounts" statute, set forth in La. R.S. 9:2781, which reads in pertinent part, as follows:

> When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant. Citation and service of a petition shall be deemed written demand for the purpose of this Section. If the claimant and his attorney have expressly agreed that the debtor shall be liable for the claimant's attorney fees in a fixed or determinable amount, the claimant is entitled to that amount when judgment on the claim is rendered in favor of the claimant. Receipt of written demand by the person is not required.

The Court has reviewed the affidavits and exhibits attached to Plaintiffs' memorandum, including the purchase orders, email communications, and a demand

---

[25] *See Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C–10–390, 2011 WL 4738197, at *3 (S.D.Tex. Oct. 5, 2011).
[26] *See Taylor*, 39 F.Supp.3d at 814.
41377

letter sent to Defendant relating to the orders. The Court finds that Plaintiffs have established that they are owed the amount claimed by virtue of the uncontested evidence presented. Further, Plaintiffs contend that under La. R.S. 9:2784, Plaintiffs are entitled to the full penalty of 15% of the outstanding balance due – that is, 15% of $106,703.31, which is $16,005.49, plus attorneys' fees. La. R.S. 9:2784 provides as follows:

> A. When a contractor receives any payment from the owner for improvements to an immovable after the issuance of a certificate of payment by the architect or engineer, or when a contractor receives any payment from the owner for improvements to an immovable when no architect or engineer is on the job, the contractor shall promptly pay such monies received to each subcontractor and supplier in proportion to the percentage of work completed prior to the issuance of the certificate of payment by such subcontractor and supplier, or by the owner if no architect or engineer is on the job. Further, whenever a subcontractor receives payment from the contractor, the subcontractor shall promptly pay such monies received to each sub-subcontractor and supplier in proportion to the work completed.
>
> B. If for any reason the contractor receives less than the full payment from the owner, then the contractor shall be obligated to disperse only the funds received on a prorated basis with the contractor, subcontractors, and suppliers each receiving a prorated portion based on the amount due on the payment.
>
> C. If the contractor or subcontractor without reasonable cause fails to make any payment to his subcontractors and suppliers within fourteen consecutive days of the receipt of payment from the owner for improvements to an immovable, the contractor or subcontractor shall pay to the subcontractors and suppliers, in addition to the payment, a penalty in the amount of one-half of one percent of the amount due, per day, from the expiration of the period allowed herein for payment after the receipt of payment from the owner. The total penalty <u>shall not exceed fifteen percent</u> of the outstanding balance due. In addition, the contractor or subcontractor shall be liable for reasonable attorney fees for the collection of the payments due the subcontractors and suppliers. However, any claim which the court finds to be without merit shall subject the claimant to all reasonable costs and attorney fees for the defense against such claim.
>
> D. The provisions of this Section shall not be applicable to improvements

to an immovable that is used for residential purposes.[27]

Based on the applicable law and the evidence submitted in this matter, the Court finds that Plaintiffs' motion for default judgment should be granted, and Plaintiffs are entitled to the relief sought.

**E. Damages**

A defaulting defendant "concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages."[28] A court's award of damages in a default judgment must be determined after a hearing, unless the amount claimed can be demonstrated "by detailed affidavits establishing the necessary facts."[29] If a court can mathematically calculate the amount of damages based on the pleadings and supporting, a hearing is unnecessary.[30]

Considering the claim at issue in this lawsuit is an open account, the Court finds that the damages to which Plaintiffs are entitled can be mathematically calculated and have been demonstrated by the supporting documentation provided. Thus, a hearing to determine damages is unnecessary in this case.

**F. Attorneys' Fees**

Plaintiffs seek reasonable attorneys' fees in the amount of $6,753.88. Plaintiffs have attached counsel's billing records for this matter and a *Declaration* by Jeanette A. Donnelly ("Donnelly"), wherein Donnelly declares that she is an attorney with Fishman Haygood, LLP, that she is counsel of record for Plaintiffs in this matter, and the amounts

---

[27] Emphasis added.
[28] *Ins. Co. of the W. v. H & G Contractors, Inc.*, 2011 WL 4738197, *4 (S.D. Tex., Oct. 5, 2011).
[29] *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir.1979).
[30] *Joe Hand Promotions, Inc. v. Alima*, No. 3:13–CV–0889–B, 2014 WL 1632158, at *3 (N.D.Tex. Apr. 22, 2014) (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir.1993)).
41377

charged to Plaintiffs for the specific actions taken in pursuit of this claim. Missing from this *Declaration* is any reference to the partner who, according to the billing records, worked on this matter and billed 3.5 hours at the rate of $425.00 per hour. There is no information regarding years of practice by either billing attorney, their areas of expertise, any complexities of this case, or any reference to the standard hourly billing rate in the community.

In the Fifth Circuit, the "lodestar" method is used to calculate reasonable attorneys' fees.[31] The "lodestar" analysis involves a two-step procedure.[32] Initially, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers. Then, the court must multiply the reasonable hours by the reasonable hourly rates.[33] The product is the "lodestar," which the court either accepts or adjusts upward or downward, depending on the circumstances of the case, assessing the factors set forth in *Johnson v. Georgia Highway Express, Inc.*[34]

A court's discretion in fashioning a reasonable attorney's fee is broad and reviewable only for an abuse of discretion, *i.e.*, it will not be reversed unless there is strong evidence that it is excessive or inadequate, or the amount chosen is clearly erroneous.[35] To determine a reasonable fee, a court must provide a concise but clear explanation of its reasons for the fee award, making subsidiary factual determinations regarding whether the requested hourly rate is reasonable, and whether the tasks reported by counsel were

---

[31] *In re Fender,* 12 F.3d 480, 487 (5th Cir.1994), *cert. denied*, 511 U.S. 1143, 114 S.Ct. 2165, 128 L.Ed.2d 888 (1994).
[32] *Louisiana Power & Light Company v. Kellstrom*, 50 F.3d 319, 323-324 (5th Cir.1995) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).
[33] *Id.* at 324.
[34] 488 F.2d 714, 717–19 (5th Cir.1974).
[35] *Hopwood v. State of Texas*, 236 F.3d 256, 277, n.79 (5th Cir. 2000); *Hensley*, 461 U.S. at 436–37.
41377

duplicative, unnecessary, or unrelated to the purposes of the lawsuit.[36] The Fifth Circuit has noted that its "concern is not that a complete litany be given, but that the findings be complete enough to assume a review which can determine whether the court has used proper factual criteria in exercising its discretion to fix just compensation."[37]

In assessing the reasonableness of attorneys' fees, the court must first determine the "lodestar" by multiplying the reasonable number of hours expended and the reasonable hourly rate for each participating attorney.[38] The party seeking the fee bears the burden of proof on this issue.[39]

The Court begins by determining whether the number of hours claimed by Plaintiffs' attorneys is reasonable.[40] Local Rule 54 provides specific guidance regarding how this burden is met, stating: "the party desiring to be awarded such fees shall submit to the court a contemporaneous time report reflecting the date, time involved, and nature of the services performed. The report shall be in both narrative and statistical form and provide hours spent and justification thereof."[41] "Where the documentation of hours is inadequate, the district court may reduce the award accordingly."[42]

The Court must also determine if the hourly rates of $425/hour for billing partner John D. Werner and $290/hour for billing associate Donnelly are reasonable given

---

[36] *Hensley*, 461 U.S. at 437–39; *Associated Builders & Contractors v. Orleans Parish School Board,* 919 F.2d 374, 379 (5th Cir. 1990).
[37] *Brantley v. Surles*, 804 F.2d 321, 325–26 (5th Cir.1986).
[38] *See Hensley*, 461 U.S. at 433; *Green v. Administrators of the Tulane Educ. Fund*, 284 F.3d 642, 661 (5th Cir. 2002); *Associated Builders & Contractors,* 919 F.2d at 379; *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir.1998); *Kellstrom*, 50 F.3d at 324.
[39] *See Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir.1996); *Kellstrom,* 50 F.3d at 324.
[40] *Migis*, 135 F.3d at 1047.
[41] M.D. La. LR54(b).
[42] *Cooper v. Pentecost*, 77 F.3d 829, 832 (5th Cir. 1996) (quotation marks omitted); *see also Kellstrom*, 50 F.3d at 324 ("[A] district court may reduce the number of hours awarded if the documentation is vague or incomplete.").
41377

counsels' ability, competence, experience, and skill. An attorney's reasonable hourly rate should be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."[43] The Fifth Circuit has emphasized that "the relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits."[44]

Counsel for Plaintiffs has failed to provide the Court with any information regarding either billing attorney's years of experience or level of expertise in any particular field. Further, counsel has failed to provide the Court with examples of the prevailing rate to be paid in this community. Thus, the Court finds guidance in the decision by the District Court for the Eastern District of Louisiana in *Blackwater Diving, LLC v. Monforte Exploration, LLC*.[45] In *Blackwater Diving*, the plaintiff brought an open account suit pursuant to La. R.S. 9:2781 and further claimed reasonable attorneys' fees thereunder. The court ultimately ruled in the plaintiff's favor and found that it was entitled to attorneys' fees under the statute. The court stated:

> Louisiana's open account statute, La. R.S. § 9:2781, provides for an award of reasonable attorney's fees for the prosecution and collection of a claim when judgment on the claim is rendered in favor of the claimant. La. R.S. § 9:2781(A). An award of attorney's fees under this statute is exceptional and penal in nature so its application must be strictly construed. *Frank L. Beier*

---

[43] *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also Leroy v. City of Houston*, 906 F.2d 1068, 1078–79 (5th Cir.1990) ("In evaluating an attorneys' fees award, we are guided by the overriding principles that a reasonable attorney's fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys ...." (quotation marks and alterations omitted)).
[44] *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (quotation marks omitted).
[45] No. 15-70, 2015 WL 4397142 (E.D. La. July 16, 2015). The prevailing market fee is generally determined by affidavits filed by attorneys practicing in the area. *Ball v. LeBlanc*, 2015 WL 4454779 at *3 (M.D. La. July 20, 2015), quoting *Tollett*, 285 F.3d at 368. However, markets of comparable sizes can be informative in determining the prevailing market rate of another district. *See e.g., Strogner v. Sturdivant*, No. 10–125–JJB–CN, 2011 WL 6140670, at *2 n.4 (M.D.La. Dec. 9,2011) (**finding that the rate in New Orleans could help determine the rate in Baton Rouge because after Hurricane Katrina, the size of New Orleans and Baton Rouge became more comparable**); *Advocacy Center v. Cain,* 2014 WL 1246840, at *7 n. 6 (M.D. La. Mar. 24, 2014)(same).
41377

*Radio, Inc. v. Black Gold Marine, Inc.*, 449 So.2d 1014, 1016 (La.1984). The quantum of fees awarded under § 2781 is left to the sound discretion of the district court. *Metro. Reporters, Inc. v. Avery*, 665 So.2d 547, 550 (La.App. 5th Cir.1995). Some of the factors that guide the court's discretion are the ultimate result obtained, the amount involved, the extent and character of labor performed, the legal knowledge, skill, and diligence of counsel, the number of appearances made, the intricacies of the facts and law involved, and the court's own knowledge. *Id.* (citing *S. Jackson & Son, Inc. v. Aljoma Lumber, Inc.*, 637 So.2d 1311 (La.App. 4th Cir.1994); *Julius Cohen Jeweler, Inc. v. Succession of Jumonville*, 506 So.2d 535 (La.App. 1st Cir.1987)).[46]

The court then evaluated the itemized billing statements submitted by the attorneys. The court noted that the lead attorney had over 35 years of litigation experience, an impressive résumé, and oversaw the entire litigation – which was not resolved by default judgment.[47] Thus, the court found reasonable a rate of $280/hour in light of the lead attorney's background and experience.[48] The associate working on the case graduated from law school four years prior to the litigation (2011) and had been admitted to practice in the Eastern District for two years at the time of the case (2013); thus, the court found that a rate of $150/hour was reasonable in the region for the associate's experience.[49]

The lead attorney billed 28.1 hours and 58.05 hours on the case, which was resolved in the plaintiff's favor on a motion to enforce a settlement agreement.[50] The Court rejected the necessity of these hours and stated:

> The Court is persuaded that this case did not require nearly this much attorney time. While counsel obtained a favorable judgment for their client, this case presented a simple collection matter on an unpaid invoice that the defendant essentially admitted that he owed. Neither attorney was required to make appearances in court. The time sheets suggest some duplication

---

[46] *Blackwater Diving*, 2015 WL 4397142 at *1.
[47] *Id.*
[48] *Id.*
[49] *Id.*
[50] *Id.* at *2.

41377

of effort and redundancy of attorney time, and while this might be a result of having an experienced attorney oversee the work of an associate, it remains that there was nothing complicated or intricate about the facts or law in this case.[51]

The court reduced the lead attorney's recoverable hours to 15 and the associate's hours to 35 and calculated the fee based on the rate found reasonable by the court.[52]

For several of the same reasons set forth by the *Blackwater Diving* court, this Court finds that both the hours expended and the hourly rates requested should be reduced. First, this case presented only a simple collection matter and was even less involved than *Blackwater Driving* considering no court appearances were ever made or required, and Plaintiffs have been awarded a default judgment after presenting a case that has never been contested. Further, there is nothing complicated or intricate about the law or facts of this case; indeed, the facts are straightforward. Thus, the Court will reduce the hours of the billing partner to 2, and reduce the billing hours of the associate to 10.[53]

As the Court has already stated, the Court has no information regarding the experience of the attorneys who represented Plaintiffs in this case. Thus, the Court is left with the *Blackwater Diving* decision as guidance. Accordingly, the Court will reduce the billing partner's reasonable hourly rate to $280 and the billing associate's reasonable hourly rate to $150. Therefore, having determined the "lodestar" reasonable hourly rates and hours for the billing attorneys, and after consideration of the *Johnson* factors,[54] the

---

[51] *Id.*
[52] *Id.*
[53] The Court notes that the billing entries associated with drafting, revising, finalizing and filing the motion for default judgment, which total nearly 7 hours, appear duplicative and excessive in light of the simplicity of the motions and the facts of this case.
[54] The twelve factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results
41377

Court finds that an attorneys' fee in the amount of $2,060.00 is reasonable.[55]

In accordance with Local Rule 54(a), the Court will refer the matter of costs and expenses to the Clerk of Court's Office.

## III. CONCLUSION

For the reasons set forth above, Plaintiffs' *Motion for a Judgment of Default Pursuant to F.R.C.P. 55 and Local Rule 55* on March 2, 2017[56] is GRANTED.

*Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on October 3, 2017.

*/s/ Shelly D. Dick*

**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Johnson*, 488 F.2d 714, 717-19 (5th Cir.1974). Counsel presented no argument of the *Johnson* factors to the Court.

[55] The Court reached this amount by calculating 2 hours x $280 for the billing partner, totaling $560; and 10 hours x $150 for the billing associate, totaling $1,500.00; resulting in $2,060.00.

[56] Rec. Doc. No. 12.

41377